IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JANE DOE, | : | No. |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| MORAVIAN COLLEGE and ABDULRAHMAN | : | CIVIL ACTION |
| ALGHAMDI, | : | |
| | : | JURY TRIAL DEMANDED |
| Defendants. | : | |

## COMPLAINT

Plaintiff, Jane Doe (hereinafter referred to as the Plaintiff), by and through her attorneys,

John R. Vivian, Jr., Esquire and Adam D. Meshkov, Esquire, and Eleanor Breslin, Esquire, brings

the following civil action Complaint against the Defendant Moravian College (hereinafter

Moravian) and Defendant Abdulrahman Alghamdi (hereinafter Alghamdi) and respectfully avers

as follows:

## JURISDICTION

1.      This Court has Jurisdiction over this matter as Plaintiff's claims arise under Title

IX of the Civil Rights Act of 1964, 20 U.S.C., §1681 - 1688 et seq., as amended by the civil

rights of 1972 and 42 U.S.C., §1983. Jurisdiction is further invoked pursuant to 28 U.S.C.,

§1331 as the matter involves a federal question. The matter is controversy exceeds the sum or

value of One Hundred Fifty Thousand ($150,000.00) Dollars exclusive of interest and costs.

## VENUE

2.      Venue is proper in this Court pursuant to 28 U.S.C., §1391 (b)(2) because the

events forming the basis of Plaintiff's claim occurred within the confine of the United States

District Court for the Eastern District of Pennsylvania, having occurred on the campus of

Moravian College.

## PARTIES

3.      Plaintiff Jane Doe, is an adult individual and resident of the Commonwealth of

Pennsylvania, who was at all times pled in the Complaint and is currently a matriculated student

at Defendant Moravian, who was, at all material times herein, a student at said college.  Plaintiff,

is using the Jane Doe pseudonym because of the sensitive nature as set forth herein and the

embarrassment and shame caused by the incidents described hereafter in this Complaint.

4.      Defendant Moravian, is upon information and belief a validly existing

organization or institution believed to be a non-profit corporation of an educational nature, with

its principle place of business at 1200 Main Street, City of Bethlehem, County of Northampton,

Pennsylvania 18018 and at all times material hereto said Defendant Moravian was providing

resident education to the Plaintiff including living quarters under their control at their main

campus located at the aforementioned address.

5.      Defendant Alghamdi is an adult individual and non-citizen of the United States of

America, who is believed to be located within the confines of the United States, who was at all

material times hereto, a student and resident at the Defendant Moravian.

## FACTUAL BACKGROUND ALLEGATIONS COMMON TO ALL COUNTS

6.     Plaintiff matriculated and began her education at Defendant Moravian in August 2016, as a scholarship student and is still enrolled at the Defendant institution working toward a four-year college degree.

7.     Defendant Alghamdi is believed to have matriculated with and began his education at Defendant Moravian in August 2016, as an international student, whom was known by the Defendant Moravian to be on a student visa, and Defendant Alghamdi's attendance at Defendant Moravian was terminated via expulsion based upon the forceable rape of the Plaintiff Jane Doe on August 28, 2016.

8.     Upon matriculation at the Defendant Moravian both Plaintiff and Defendant Alghamdi were assigned rooms in Bernhardt Hall, said dormitory and resident rooms being under the control and direction of the Defendant Moravian and subject to whatever security procedures the Defendant Moravian elected to apply in this dormitory setting.

9.     On or about August 28, 2018, within the first week of attendance at Moravian College the Plaintiff attended an event known as "Midnight Oasis" held on the campus of Moravian College.  Said event being hosted by the Defendant Moravian and part of the orientation schedule.

10.    Following the attendance at Midnight Oasis, the Plaintiff departed same in the company of a friend and went to that friend's dormitory at which time an individual believed to be Defendant Alghamdi followed the Plaintiff and her friend into the said dormitory.

11.    The Plaintiff noticed that the individual believed to be the Defendant Alghamdi appeared to be intoxicated and he began a conversation with the Plaintiff who other than meeting

3

this Defendant earlier in the day while she was making a phone call in the common area of their common dormitory, did not know the Defendant Alghamdi.

12.     The Defendant Alghamdi asked the Plaintiff to go for a walk outside, which she agreed to do believing that the fresh air would be of an aid to the Defendant Alghamdi since he appeared to be quite intoxicated.

13.     It is believed and therefore averred that the Defendant became intoxicated on the property of Defendant Moravian and/or one of their fraternities under the direction and control of Moravian College.

14.     The Plaintiff walked back to her dormitory in the company of Defendant Alghamdi and was asked by the Defendant Alghamdi to wait for him while he retrieved something in his dormitory room at Bernhardt Hall prior to going for a walk.

15.     As the Plaintiff was waiting outside the Defendant Alghamdi's dormitory room, the Defendant called out to the Plaintiff and asked her to come in to the room as it was taking him a while to locate what he wanted.

16.     The Plaintiff entered the Defendant Alghamdi's dormitory room and almost immediately upon entry the Defendant push closed the door, and is believed to have locked same and pushed the Defendant down onto his bed.

17.     At that time, the Defendant Alghamdi in a violent manner and without the consent of the Plaintiff, proceeded to rape the Plaintiff anally (sodomize).

18.     At the time of this violent and unwelcomed sexual assault, a resident assistant (R.A.) was located in close proximity to Defendant Alghamdi's room and is believed to have

4

heard the screams and loud protestations of the Plaintiff as the Defendant Alghamdi was committing these unwanted heinous acts upon the Plaintiff.

19.     The acts committed by the Defendant Alghamdi were of such a violent nature that the Plaintiff actually bled for a number of days following the violent anal penetration by the Defendant Alghamdi.

20.     Following the sexual assault acts as set forth above, the Plaintiff escaped from the room and at that time had a brief conversation with the RA believed to be referred to as "Baru" and possibly believed to be an individual with the last name of Robertson.

21.     At the time of the conversation with the RA mentioned heretofore, the Plaintiff reported to the RA what had happened and asked him if he heard or didn't hear what was going on.

22.     As part of the conversation set forth heretofore with the RA, the RA told the Plaintiff that he wasn't going to do anything about it because there would be "a lot of paperwork to fill out".

23.     It is believed and therefore averred that the RA took no action to discover, intercede, or otherwise aid the Plaintiff during this violent sexual assault.

24.     The RA referred to above as Baru or Mr. Robertson, did not report the incident, nor is it believed that he informed the Plaintiff of her rights to report the incident.

25.     It is believed that the RA known as Baru or Mr. Robertson was allowed to remain in the position of RA, following this incident and further that after the Defendant Moravian was informed of the facts set forth regarding Baru or Mr. Robertson that he was reappointed as an RA, the following semester and the next year. It is further believed and averred that the RA was

5

under the direct control of Defendant Moravian and subject to the rules regarding security, reporting, and rendering of assistance to all dormitory residents including the Plaintiff and those rules were not enforced by the Defendant.

26.     It is believed and therefore averred that on the next day, this incident having happened in the early morning hours of August 28, 2016, the Plaintiff informed the Plaintiff's resident assistant, Nina Pascrol when she noticed that the Plaintiff appeared to be disheveled and visibly upset and inquired into whether or not the Plaintiff was experiencing any difficulties at which time the Plaintiff informed Nina Pascrol of the details of the violent sexual assault set forth above, and at which time she was still actively bleeding from the assault.

27.     It is believed and therefore averred that Nina Pascrol reported the incident to Leah M. Naso Breisch, the Title IX Coordinator and Compliance Officer at Defendant Moravian.

28.     It is believed and therefore averred that following this report the Plaintiff was contacted by Ms. Breisch following which a series of contacts occurred between Ms. Breisch on behalf of the college and the Plaintiff.

29.     Despite having had notification of this alleged heinous, violent sexual act, Ms. Breisch did not immediately encourage the Plaintiff to file an official report of sexual assault against the Defendant Alghamdi.

30.     Following the first notification of Ms. Breisch and continuing up to and through the eventual hearing that took place on May 30, 2017 or May 31, 2017, the accused sexual predator, Defendant Alghamdi was allowed to attend the same classes as the Plaintiff and would consistently sit next to her in class despite at some point a no contact order and was allowed to remain as a resident in the same residence hall, Bernhardt Hall, to the great emotional distress

6

and despite the fear of this individual, which the Plaintiff evinced and informed the Defendant Moravian through among other individuals, Ms. Breisch of these continuing activities.

31.     Upon informing Ms. Breisch that the continued presence of Defendant Alghamdi was harmful to the Plaintiff, not only on a personal level, but upon an academic level, whereby she was afraid to go to classes, which she was enrolled in, the remedy proffered by the Defendant Moravian through Ms. Breisch was that all corrective action including, but not limited to moving from Bernhardt Hall to a different residence, dropping out of and taking different classes, were all presented to her as her option, while not considering that Defendant Alghamdi should be removed from her classes, and at a minimum relocated to another dormitory, which resulted in the victimizing of the Plaintiff yet again.

32.     The Defendant Moravian was aware that the Plaintiff could not change her residence and further change classes because of an expressed fear that her parents would find out about this incident and make her drop out of college or matriculate at another institution. Despite knowledge of this, the only remedies offered by Defendant Moravian to the Plaintiff were remedies whereby she had to take action to escape the constant presence of her violent sexual predator namely the Defendant Alghamdi.

33.     Despite the entry of a No Contact Order by the Defendant Moravian, the Defendant Alghamdi continued to sit close to the Plaintiff in class and to violate the No Contact Order on a number of occasions between the entry of said Order and the actual Title IX Hearing on May 30 and May 31, 2017, so that the Plaintiff had to endure the presence of her sexual assaulter over a period of months. This caused such a level of emotional distress that the Plaintiff did not attend and could not bring herself to attend two classes, which she ended up

7

failing as result of the inaction of the Defendant Moravian in actually enforcing the No Contact Order.

34.      The Defendant Moravian offered counseling to the Plaintiff at their counseling center and the Plaintiff went for an appointment where she was informed that her assault was "just anal" and that she had entered his room willingly.  The end result of this incompetent counseling provided by the college facility was that the Plaintiff felt victimized yet again to her great emotional distress.

35.      It is believed and averred that the Defendant Moravian conducted an investigation of this matter which revealed among other facts that the accused Defendant Alghamdi had incidents with other women, which are fairly characterized as sexual harassment and misdeeds, but even upon discovery of those acts by the Defendant Alghmadi, the Defendant Moravian still took no actions to remove him completely from the classes in which the Plaintiff was enrolled, or the very dormitory, which should have been a sanctuary for the Plaintiff in which she was a resident.

36.      It is believed and therefore averred that at the Title IX hearing the Defendant Alghamdi demanded the presence of an interpreter even though he was fluent in English, having attended classes in English and been proctored in English.

37.      It is believed and therefore averred that the Defendant Alghmadi at the Title IX hearing referenced above, in response to questioning pled the Fifth Amendment so as to not incriminate himself.

8

## COUNT I

## CLAIM UNDER TITLE IX (20 U.S.C.A. §1681) SEXUAL ASSAULT PLAINTIFF JANE DOE V.  DEFENDANT MORAVIAN COLLEGE

38.    Plaintiff incorporates by reference paragraphs one through thirty seven, as though same were set forth fully and at length herein.

39.    Title IX (20 U.S.C.A. §1681), provides in subsection (a), Subject to certain exceptions, that "(n)o person in the United States shall on the basis of sex be excluded from participation in, be denied the benefits of, or be subject to discrimination under any Education Program or activity receiving Federal Financial Assistance," where the Plaintiff, as Student, was sexually abused and harassed by the Defendant Alghamdi.

40.    Plaintiff was subjected to a violent sexual attack as set forth above, during which a Resident Assistant  believed to be named "Baru" or "Mr. Robertson", as an agent, servant and/ or employee of Defendant Moravian, was present and took no action whatsoever despite the screams and protestations of the Plaintiff to inquire, investigate, notify security, or even simply knock on the sexual abusers door in order to render aid to the Plaintiff.

41.    At all materials times herein, Defendant Moravian through their agents, servants and/or employees, including, but not limited to this Resident Assistant had actual and/or constructive notice that the Plaintiff was being violently sexually assaulted in a dorm room and on a dorm floor directly under the supervision of the Resident Assistant.

42.    Following this violent sexual assault, the Plaintiff upon escaping from the Defendant Alghamdi's room immediately informed the Resident Assistant as to what had occurred and the Resident Assistant believed to be in the employment Defendant Moravian, when apprised of this willful and violent sexual misconduct on the part of Defendant Alghamdi

9

dismissed the complaints of the Plaintiff and claimed that reporting same would involve a lot of unwanted paperwork.

43.     It is believed and therefore averred that the Defendant Moravian by and through the actions of its employee and Resident Assistant, identified above, was deliberately indifferent both during and subsequent to Plaintiff's violent sexual assault at the hand of Defendant Alghamdi.

44.     Defendant Moravian, at all material times hereto, was consciously disregarding the actions of its agents, servants and employees, such as the Resident Assistant involved in this incident concerning the inappropriate and deliberate indifference of their employee toward the Plaintiff both during and subsequent to this sexual assault.

45.     Defendant Moravian, at all materials times hereto, continued to consciously disregard and/or even discipline the RA, for this shameful, deliberate indifference to the violent sexual assault against the Plaintiff Jane Doe, and in fact, in the future still allowed this Resident Assistant to maintain his position of employment; therefore, further confirming and condoning the shameful inaction of this Resident Assistant.

46.     Defendant Moravian, at all material times hereto, failed to provide a secure system of supervision and proper training of its employees, servants and agents, known as Resident Assistants, including but not limited to the Resident Assistant identified above on the night of the incident in order to protect the Plaintiff Jane Doe and other similarly situated students from the violent and predatory sexual acts of other students, including, but not limited to Defendant Alghamdi.

47.      As a direct and proximate result of Defendant Moravian's deliberate indifference by and through its agents, servants and employees as set forth above, and as substantial factor in brining about the injuries to the Plaintiff, Plaintiff Jane Doe has been rendered to suffer mental and physical pain, anguish and agony, which Plaintiff has suffered, yet suffers, and will continue to suffer, for an indefinite time in the future.

48.      Further, Plaintiff avers that she may have sustained other injuries.

49.      As a result of the aforesaid Defendant Moravian's deliberate indifference and willful misconduct by and through its agents, servants and employees, Plaintiff Jane Doe has undergone in the past and will in the future continue to undergo and suffer great physical pain and emotional distress and anguish, all of which may continue in the future.

50.      As a result of the aforesaid Defendant Moravian's deliberate indifference and willful misconduct by and through its agent, servants and employees, Plaintiff has suffered the loss of the enjoyment of her usual duties and life's pleasures and activities, all to her great detriment and loss and will continue to suffer same into the future.

51.      As a result of the aforesaid Defendant Moravian's deliberate indifference and willful misconduct by and through its agent, servants and employees, the Plaintiff Jane Doe was detrimentally affected in her educational pursuits, affecting her grades, her completion of classwork, ability to feel safe and secure in her residence, all of which created a hostile educational environment for Plaintiff Jane Doe at Defendant Moravian's main campus.

52.      As a result of the aforesaid Defendant Moravian's deliberate indifference and willful misconduct by and through its agent, servants and employees, has caused the Plaintiff Jane Doe undue stress, discord, anxiety and affected both her physical and emotional health and

well being and her ability to her participate fully in her student activities both academically and socially.

WHEREFORE, Plaintiff Jane Doe respectfully requests that this Honorable Court enter judgment in her favor and against the Defendant Moravian for an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars, together with interest, costs and reasonable attorneys' fees.

## COUNT II

## CLAIM UNDER TITLE IX (20 U.S.C.A. §1681) DAVIS CLAIM FOR HOSTILE COLLEGIATE ENVIRONMENT
## PLAINTIFF JANE DOE V. DEFENDANT MORAVIAN COLLEGE

53.     Plaintiff incorporates by reference paragraphs one through fifty two, as though same were set forth fully and at length herein.

54.     Title IX (20 U.S.C.A. §1681), provides in subsection (a), Subject to certain exceptions, that "(n)o person in the United States shall on the basis of sex be excluded from participation in, be denied the benefits of, or be subject to discrimination under any Education Program or activity receiving Federal Financial Assistance," where the Plaintiff, as Student, was sexually abused and harassed by the Defendant Alghamdi.

55.     As set forth heretofore in the Complaint, following the first report made to the Title IX Coordinator, Ms. Breisch, the Plaintiff made a number of requests of Defendant Moravian requesting that her attacker Defendant Alghamdi, be removed from classes in which they were both enrolled, relocated to another dormitory, and that the No Contact Order be strictly enforced against the Defendant attacker, and that request was made to no avail, conversely the Defendant Moravian, offered as a remedy that the victim in this matter, Plaintiff Jane Doe, be the

person to not attend classes where she could get recordings, or move her residence outside that dormitory.

56.     Plaintiff Jane Doe believes and avers that after the assault, the attacker's continued presence not only on the campus, but with his residence in her same dormitory and attendance in her classes where he would sit close to her and the risk that she might have to see and/or have to interact with him, deprived her of the institution's educational benefit and opportunities.

57.     Plaintiff Jane Doe believes and avers that despite repeatedly making requests for these reasonable accommodations following the assault, that the university failed to respond to same and continued to fail to respond to same up until the completion of the Title IX hearing, when the Defendant Alghamdi was finally expelled.

58.     Plaintiff Jane Doe believes and avers that the Defendant Moravian's failure to appropriately respond exposed the Plaintiff Jane Doe to further harassment by her attacker as well as his friends, that the Defendant failed in its duty under Title IX to prevent future harassment and contact by the violent, sexual predator, Defendant Alghamdi.  Therefore, it is believed and averred that the severity of the harassment, was within the actual and/or constructive notice of the Defendant Moravian, and that the Defendant Moravian exhibited deliberate indifference to this harassment by taking absolutely no action short of the Title IX hearing date against the violent sexual predator and attacker of the Plaintiff Jane Doe, one Defendant Alghamdi.

59.     Plaintiff Jane Doe as a direct and proximate result of the deliberate indifference of the Defendant Moravian, following this violent sexual assault allowed this hostile collegiate

environment under the standards extant in <u>Davis v. Monroe County Board of Education, et al.,</u> <u>119 S.Ct. 1661 (1999)</u>.

60.    Plaintiff believes and therefore avers that under the facts following the attainment of knowledge by the Defendant Moravian's employee, agent and servant, Ms. Breisch, that Defendant Moravian acted with deliberate indifference as to this sexual assault, which was so severe that it effectively in the aftermath by not acceding to these reasonable accommodations barred the victim's access to an educational opportunity or benefit; and that further, Defendant Moravian had, but failed to exercise substantial control over the attacker Defendant Alghamdi and had actual knowledge that the continued presence and interaction of Defendant Alghamdi with the Plaintiff Jane Doe was continuing to cause further physical and emotional stress to the Plaintiff depriving her of her educational opportunity and benefits.

61.    As a direct and proximate result and substantial factor this failure to act and deliberate indifference in the wake of this violent sexual assault caused the Plaintiff all of the damages set forth in paragraphs 16 through 37 of this Complaint.

62.    Any and all commissions and/or omissions, practices and policies of Defendant Moravian as set forth above, collectively constitute violations of Title IX, 20 U.S.C.A. §1681, which prohibits sexual hostile climates in schools.

WHEREFORE, Plaintiff Jane Doe respectfully requests that this Honorable Court enter judgment in her favor and against the Defendant Moravian for an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars, together with interest, costs and reasonable attorneys' fees.

## COUNT III

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## UNDER PENNSYLVANIA COMMON LAW
## PLAINTIFF JANE DOE V.  DEFENDANT MORAVIAN COLLEGE

63.     Plaintiff incorporates by reference paragraphs one through sixty two, as though
same were set forth fully and at length herein.

64.     Defendant Moravian by allowing the hostile collegiate environment to continue to
exist between the original reporting to Defendant Moravian's agent, servant and employee, Ms.
Breisch, up until the Title IX Hearing, which occurred on May 30 and May 31, 2017, by refusing
any reasonable accommodation to the Plaintiff concerning the continued presence of the violent
sexual predator Defendant Alghamdi as resident in the Plaintiff's dormitory as well as her classes
prior to his expulsion was acting intentionally and/or recklessly, beyond all possible bounds of
decency and said Defendant Moravian's conduct is regarded as atrocious and utterly intolerable
in a civilized society.

65.     Defendant Moravian's action in providing counseling services by and through
their agents, servants and employees and minimizing the Defendant's sexual assault as "just
anal" constitutes actions taken intentionally and/or recklessly beyond all possible bounds and
decency, and said Defendant's conduct is regarded as atrocious and utterly intolerable in a
civilized society.

66.     Defendant Moravian's failure to accede to Plaintiff Jane Doe's reasonable request
to have the Defendant Alghamdi removed from contact with her in both her classes as well as his
continued presence in the dormitory, despite such complaints and requests, were acts taken
intentionally and/or recklessly, and constitute acts beyond all possible bounds and decency and

15

said Defendant's conduct was continuous and regarded as atrocious, and utterly intolerable in a civilized society.

67.     As a direct and proximate result of the above-described occurrence and as a substantial factor in the brining about the damages to the Plaintiff Jane Doe, Plaintiff suffered a severe infliction of emotional distress and embarrassment, past, present and future.

68.     As a direct and proximate result of the above-described occurrence and as a substantial factor in the brining about the damages to the Plaintiff Jane Doe, the acts of the Defendant Moravian and its agent, servant and employees, the Plaintiff lived in continual fear of physical harm and severe emotional distress because of the presence of the violent, sexual predator Defendant Alghamdi, up until his expulsion following the Title IX hearing.

69.     As a direct and proximate result of the above-described occurrence and as a substantial factor in the brining about the damages to the Plaintiff Jane Doe, the acts of the Defendant Moravian and its agent, servant and employees, the Plaintiff Jane Doe suffered shock and injury to her nerves and nervous system and other severe and serious injuries, all of which are or may be permanent in nature.

70.     As a direct and proximate result of the above-described occurrence and as a substantial factor in the brining about the damages to the Plaintiff Jane Doe, the acts of the Defendant Moravian and its agent, servant and employees, the Plaintiff Jane Doe suffered and will continue to suffer embarrassment, emotional distress and anguish, and loss of the enjoyment of life.

71.     At all times material hereto, the Defendant Moravian and their agents, servant and employees, willful misconduct, as heretofore set forth in this Complaint, was a part of an

16

ongoing pattern of discrimination, and were continuing violations of the Plaintiff's rights leading to a compounding of damages as set forth heretofore.

72. Plaintiff Jane Doe hereby demands punitive damages against the Defendant Moravian, based upon these outrageous and/or reckless acts believed to have been accompanied by bad motives and/or with a reckless indifference to the interest and welfare of the Plaintiff Jane Doe.

WHEREFORE, Plaintiff Jane Doe respectfully requests that this Honorable Court enter judgment in her favor and against the Defendant Moravian for an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars, together with punitive damages, interest, costs and reasonable attorneys' fees.

## COUNT IV

## COMMON LAW NEGLIGENCE
## PLAINTIFF JANE DOE V. DEFENDANT MORAVIAN COLLEGE

73. Plaintiff incorporates by reference paragraphs one through seventy three, as though same were set forth fully and at length herein.

74. Defendant Moravian furnished housing in the form of dormitories; and specifically, with respect to the Plaintiff Jane Doe in a dormitory known as Bernhardt Hall.

75. It is believed and therefore averred that the relationship between the Plaintiff Jane Doe and the Defendant Moravian College constitutes one of landlord and tenant under the law.

76. It is believed and therefore averred that there is a duty of the landlord (Defendant Moravian) to take reasonable measures in terms of security as well as notice to protect their tenants, including, but not limited to, the Plaintiff Jane Doe from the violent criminal acts of third parties including other students matriculated at Defendant Moravian.

17

77.     It is believed and therefore averred that the threat of violent sexual assault was foreseeable to the Defendant Moravian; therefore, there was a duty owed to the Plaintiff Jane Doe, a resident tenant, to warn against these acts, as well as to take reasonable measures to provide adequate security and training of security personnel to ensure the safety of its female students including, but not limited to the Plaintiff Jane Doe.

78.     It is believed and therefore averred that the Defendant Moravian had a duty not only to take proper security measures to guard against such violent sexual assault, but further had a duty to see that these security measures were implemented properly.

79.     It is believed and therefore averred that this duty applied to the security measures that needed to be implemented concerning sexual assault to all employees of the college, including the Resident Assistants.

80.     It is believed and therefore averred that the Defendant Moravian failed to implement these security measures and have a proper and reasonable security response by Resident Assistants, and further that lack of training resulting in the inaction of Resident Assistant "Baru" or "Mr. Robertson" on the night of the violent sexual assault upon the Plaintiff Jane Doe.

81.     Plaintiff believes and therefore avers that the Defendant Moravian failed in its duty to warn her of possible dangerous activities on campus and to further provide an explanation of university security measures that were in place prior to and at the time of her assault.

82.     Plaintiff believes and therefore avers that part of the duty to warn her of this type of conduct is evidenced by the provision of Cleary materials, which although given to the

18

Plaintiff, may not accurately reflect the incidence of violent sexual assault actually existing on Defendant Moravian's campus.

83.     As a direct and proximate result of the negligent acts of the Defendant Moravian, the Plaintiff has suffered all of the damages set forth in paragraphs 16 through 37 of this Complaint, as though set forth fully and at length herein.

WHEREFORE, Plaintiff Jane Doe respectfully requests that this Honorable Court enter judgment in her favor and against the Defendant Moravian for an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars, together with punitive damages, interest, costs and reasonable attorneys' fees.

## COUNT V

### COMMON LAW NEGLIGENCE UNDER PENNSYLVANIA LAW
### PLAINTIFF JANE DOE V. DEFENDANT MORAVIAN COLLEGE

84.     Plaintiff incorporates by reference paragraphs one through eighty three, as though same were set forth fully and at length herein.

85.     Plaintiff Jane Doe was a business invitee of the Defendant Moravian upon her matriculation at that institution.

86.     Plaintiff believes and therefore avers that as a business invitee the Defendant Moravian had a duty to provide protection and methods to safe guard the Plaintiff Jane Doe and other female students from the foreseeability of violent assaults such as the Plaintiff Jane Doe endured.

87.     Plaintiff incorporates herein by reference all the negligence and intentional acts set forth in the foregoing Count IV.

88.     Plaintiff believes and therefore avers that the preparation for and provision of such safeguards should be greater than that provided by a homeowner for their guests under Pennsylvania Law.

89.     Plaintiff believes and therefore avers that under a business invitee relationship the university had a duty to warn students of the danger of potential sexual assaults on women and to further instruct all of its employees including Resident Assistants of actions to be taken when victims of violent assault scream for help and aid.

90.     As a direct and proximate result of the negligent acts of the Defendant Moravian, the Plaintiff has suffered all of the damages set forth in paragraphs 16 through 37 of this Complaint, as though set forth fully and at length herein.

WHEREFORE, Plaintiff Jane Doe respectfully requests that this Honorable Court enter judgment in her favor and against the Defendant Moravian for an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars, together with interest, costs and reasonable attorneys' fees.

### COUNT VI

### ASSUALT AND BATTERY
### PLAINTIFF JANE DOE V.  DEFENDANT ABDULRAHMAN ALGHAMDI

91.     Plaintiff incorporates by reference paragraphs one through ninety, as though same were set forth fully and at length herein.

92.     Plaintiff believes and therefore avers that the Defendant Alghamdi intentionally attempted by force to do an injury to her person; to wit, commit a forceable acts of sodomy (anally and orally) upon the Plaintiff without her consent.

93.    Plaintiff believes and therefore avers that the Defendant as set forth heretofore committed battery upon her in a violent manner without her consent by actually penetrating her anally and orally on August 28, 2018.

94.    Plaintiff believes and therefore avers that the Defendant at a Title IX hearing pled the Fifth Amendment, same being admissible in a civil action creating a presumption of liability in Plaintiff's favor and against the Defendant Alghamdi that he did commit such heinous acts upon the body of Plaintiff Jane Doe.

95.    As a direct and proximate result and as a substantial factor in the bringing about the injuries to the Plaintiff, the Plaintiff Jane Doe suffered all the injuries and damages set forth in paragraphs 16 through 37of this Complaint as though same are set forth fully and at length herein.

WHEREFORE, Plaintiff Jane Doe respectfully requests that this Honorable Court enter judgment in her favor and against the Defendant Abdulrahman Alghamdi for an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars, together with punitive damages, in an amount to be determined by a jury.

## COUNT VII

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### UNDER PENNSYLVANIA COMMON LAW
### PLAINTIFF JANE DOE V.  DEFENDANT ABDULRAHMAN ALGHAMDI

96.    Plaintiff incorporates by reference paragraphs one through ninety five, as though same were set forth fully and at length herein.

97.    Defendant Moravian by allowing the hostile collegiate environment to continue to exist between the original reporting to Defendant Moravian's agent, servant and employee, Ms.

Breisch, up until the Title IX hearing, which occurred on May 30 and May 31, 2017, by refusing any reasonable accommodation to the Plaintiff concerning the continued presence of the violent sexual predator Defendant Alghamdi as a resident in the Plaintiff's dormitory as well as her classes prior to his expulsion was acting intentionally and/or recklessly, beyond all possible bounds of decency and said Defendant Alghamdi's conduct is regarded as atrocious and utterly intolerable in a civilized society.

98.     Defendant Alghamdi's actions in continuing contacts with the Plaintiff after this violent sexual assault continued actions taken intentionally and/or recklessly beyond all possible bounds and decency, and said Defendant Alghamdi's conduct is regarded as atrocious and utterly intolerable in a civilized society.

99.     Defendant Alghamdi's failure to accede to Plaintiff Jane Doe's reasonable request to have the Defendant Alghamdi removed from contact with her in both her classes as well as his continued presence in the dormitory, despite such complaints and requests, were acts taken intentionally and/or recklessly, and constitute acts beyond all possible bounds and decency and said Defendant's conduct was continuous and regarded as atrocious, and utterly intolerable in a civilized society.

100.    As a direct and proximate result of the above-described occurrence and as a substantial factor in the brining about the damages to the Plaintiff Jane Doe, Plaintiff suffered a severe infliction of emotional distress and embarrassment, past, present and future.

101.    As a direct and proximate result of the above-described occurrence and as a substantial factor in the brining about the damages to the Plaintiff Jane Doe, the acts of the Defendant Alghamdi, the Plaintiff lived in continual fear of physical harm and severe emotional

distress because of the presence of the violent, sexual predator Defendant Alghamdi, up until his expulsion following the Title IX Hearing.

102.   As a direct and proximate result of the above-described occurrence and as a substantial factor in the brining about the damages to the Plaintiff Jane Doe, the acts of the Defendant Alghamdi, the Plaintiff Jane Doe suffered shock and injury to her nerves and nervous system and other severe and serious injuries, all of which are or may be permanent in nature.

103.   As a direct and proximate result of the above-described occurrence and as a substantial factor in the brining about the damages to the Plaintiff Jane Doe, the acts of the Defendant Alghamdi, the Plaintiff Jane Doe suffered and will continue to suffer embarrassment, emotional distress and anguish, and loss of the enjoyment of life.

104.   At all times material hereto, the Defendant Alghamdi's willful misconduct, as heretofore set forth in this Complaint, was a part of an ongoing pattern of discrimination, and were continuing violations of the Plaintiff's rights leading to a compounding of damages as set forth heretofore.

105.   Plaintiff Jane Doe hereby demands punitive damages against the Defendant Alghamdi, based upon these outrageous and/or reckless acts believed to have been accompanied by bad motives and/or with a reckless indifference to the interest and welfare of the Plaintiff Jane Doe.

WHEREFORE, Plaintiff Jane Doe respectfully requests that this Honorable Court enter judgment in her favor and against the Defendant Alghamdi for an amount in excess of One

Hundred Fifty Thousand ($150,000.00) Dollars, together with punitive damages, in an amount to

be determined by a jury.

John R. Vivian, Jr.
I.D. #34459
831 Lehigh Street
Easton, PA  18042
(610) 258-6625
jrvivian@verizon.net


Adam D. Meshkov
I.D. #94856
830 Lehigh Street
Easton, PA  18042
(610) 438-6300
adm@meshkovbreslin.com


Eleanor M. Breslin
I.D. # 93714
830 Lehigh Street
Easton, PA  18042
(610) 438-6300
emb@meshkovbreslin.com
*Attorneys for Plaintiff, Jane Doe*